IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LAERDAL MEDICAL CORP. and LAERDAL, PTY LTD, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:23-CV-1157-DII |
| LUCAS TOMCZAK and 3T COMPETENCE LLC, | § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Defendants Lucas Tomczak ("Tomczak") and 3T Competence LLC ("3T") (collectively, "Defendants") Partial Motion to Dismiss. (Dkt. 23). Plaintiffs Laerdal Medical Corp. ("Laerdal Medical") and Laerdal, Pty Ltd ("Laerdal Pty") (collectively, "Plaintiffs") filed a response, (Dkt. 24), and Defendants filed a reply, (Dkt. 26). Having considered the parties' submissions, the record, and the applicable law, the Court will grant the motion to dismiss.

### I. BACKGROUND

Laerdal, AS is a global healthcare education and training company with its principal place of business in Stavanger, Norway. (Compl., Dkt. 1, at 1). Plaintiffs in this suit are two subsidiaries of the Norwegian parent company: Laerdal Pty is the Australian subsidiary and Laerdal Medical is the American subsidiary. (*Id.*).

In 2013, Defendant Tomczak began his employment with Laerdal Pty in Australia. (Compl., Dkt. 1). He and Laerdal Pty signed an agreement (the "2013 Agreement"), which included his assent to written terms and conditions of his employment (the "2013 Terms and Conditions"). (2013

1

Agreement, Dkt. 24-1; 2013 Terms and Conditions, Dkt. 23-2).[1] The 2013 Terms and Conditions obligated Tomczak not to entice away other customers, be engaged in "any business activity . . . substantially similar" to Laerdal Pty's core business or engage in business activities that compete with Laerdal Pty or other Laerdal affiliates. (2013 Terms and Conditions, Dkt. 23-2, at 6). The 2013 Terms and Conditions reach from "the city or town in which you have been employed by the Company at any time in the last two years" to anywhere else "in the world[.]" (*Id.*). The Terms and Conditions define the "Company" as the "company offering employment." (*Id.*). The employment agreement was offered by Laerdal Pty. (*See* 2013 Agreement, Dkt. 24-1).

Tomczak worked at Laerdal Pty from November 2013 to early 2023 as a product and sales manager. (*Id.*). When he joined the company, Tomczak agreed to certain terms and conditions of his employment, which included agreements to maintain confidentiality, not to use company information for purposes beyond his work with the company, and not to compete with the company for two years after leaving the company. (*Id.*). Laerdal Pty also produced a team member handbook, which set out additional terms and conditions of his employment. (*Id.*).

In 2018, Tomczak transferred to a new role, moving from Laerdal Pty in Australia to Laerdal Medical in the United States (specifically Texas). (*Id.* at 3). Upon starting in his new Texas job, Tomczak was given a copy of the company's updated July 2018 handbook. (*Id.*). The 2018 handbook also mandated confidentiality, required trade secret protection, and contained additional noncompete provisions. (*Id.*). Plaintiffs allege that he made no objections to policies in the 2018 handbook. (*Id.*).

In February 2023, Tomczak began sending emails from his corporate email address to his personal address. (*Id.* at 4). These included business emails, attachments marked confidential or containing trade secrets, customer lists, customer contact information, product and service costs,

---

[1] Although not attached to the complaint, the Court considers both the 2013 and 2018 Agreements at this stage, as those two contracts form the basis of Laerdal's claim. *See Causey*, 394 F.3d at 288.

product and service time studies, product specifications, and manufacturing and science technology. (*Id.*).

On April 20, 2023, Tomczak submitted his resignation letter, and his employment with Laerdal Medical ended two weeks later. (*Id.* at 3). Shortly before resigning, Tomczak formed Defendant 3T on March 21, 2023. (*Id.* at 5). Plaintiffs allege that this action violated his noncompete and that the company has since used the confidential information and trade secrets. (*Id.*). Plaintiffs filed suit on September 25, 2023. (*Id.*). They allege a violation of the Defend Trade Secrets Act ("DTSA"), the Texas Uniform Trade Secrets Act ("TUTSA"), breach of contract, and tortious interference with prospective economic advantage. (*Id.* at 6–8).

Defendants filed the instant partial motion to dismiss on December 6, 2023. (Dkt. 23). They seek dismissal of Plaintiffs' breach of contract claim, arguing that his 2013 agreement was not incorporated into his 2018 agreement, that the 2018 handbook is unenforceable, and that the contracts are overbroad. (*Id.*). Plaintiffs filed a response, (Dkt. 24), and Defendants filed a reply, (Dkt. 26). Plaintiffs filed an opposed motion for leave to file a sur-reply. (Dkt. 27).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual

3

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

Defendants raise three central arguments: (1) the 2013 Agreement was not incorporated into the parties' 2018 Agreement; (2) the 2018 Handbook is not an enforceable contract;[2] and (3)

---

[2] Although Laerdal mentions the 2018 Handbook in its complaint, it does not allege in its response that the Handbook forms the basis of any agreement between the parties. (*See* Resp., Dkt. 24). Instead, Laerdal contends that the 2013 Agreement remained in force even after the 2018 Agreement was signed. (*Id.* at 6). It appears uncontested in the parties' briefing that the employee handbook cannot suffice for a breach of contract claim.

provisions of the 2013 Agreement, even if binding, cannot be enforced against Tomczak because they are overbroad.

## A. The 2013 Agreement Has Expired

The 2013 Agreement expired when Tomczak switched positions in 2018.[3] Tomczak's 2013 Agreement was with Laerdal Pty—the Australian entity. (2013 Agreement, Dkt. 23-2; *see also* Compl, Dkt. 1, at 1 ("Laerdal Pty, Ltd. is a corporation organized under the laws of Australia.")). Tomczak's 2018 Agreement was with Laerdal Medical—a separate, but related American entity. (2018 Agreement, Dkt. 24-3). Both entities are subsidiaries of Laerdal, AS, a global company with headquarters in Norway. (Compl., Dkt. 1, at 1).

Tomczak left Laerdal Pty in 2018 when he began working for Laerdal Medical. At that time, Tomczak accepted a different role in a different location with a different Laerdal entity with different compensation under a different contract. (*Compare* 2013 Agreement, Dkt. 23-2 *with* 2018 Agreement, Dkt. 23-3). When he accepted the 2018 offer and began working for Laerdal Medical Corporation in 2018, Tomczak's employment with Laerdal Pty was terminated. That triggered the tolling of his noncompete, which lasted only two years after he left Lardal Pty. (*See* 2013 Terms and Conditions, Dkt. 23-2, at 6 (noting Tomczak may not compete with Laerdal Pty "during the first [two years] after the termination of [Tomczak's] employment for any reason[.]")). Tomczak's move to Laerdal Medical was styled as a "transfer" rather than a "termination," but the effect is the same: Tomczak no longer worked for Laerdal Pty after his move. Accordingly, his non-compete obligations with Laerdal Pty expired in 2020, two years after Tomczak left the Australian subsidiary.

Many of Plaintiffs' arguments appear to conflate the two Laerdal subsidiaries, referring to both simply as "Laerdal." (*See* Resp., Dkt. 24; Proposed Surreply, Dkt. 27-1). While Laerdal AS may

---

[3] Provisions that remained in effect after Tomczak's employment ended, such as the two-year noncompete clause, expired two years after Tomczak left in 2018.

own both subsidiaries, Tomczak did not contract with the global parent company. He contracted with the separate subsidiaries, meaning that his employment terms changed when he switched jobs.

Had Laerdal Pty Ltd intended the 2013 Agreement to cover continued employment with any global Laerdal entity, it could have included language to that effect in the contract. Instead, the contract speaks in terms of the "Company," and defines "Company" as the "company offering employment to [Tomczak]."[4] (2013 Agreement, Dkt. 23-2, at 2). Laerdal Pty—not Laerdal AS— offered employment to Tomczak, so "Company" refers only to the Australian subsidiary. Further, the 2013 Terms and Conditions refer to other Laerdal entities as "associates" and explicitly distinguishes "associates" from the "Company." (*Id.* at 1, 6). In other words, the contract makes clear that it is between Tomczak and Laerdal Pty, and that other Laerdal subsidiaries are non-party "associates." (*Id.*). Because the contract did not include employment with other Laerdal subsidiaries, it did not follow Tomczak to Laerdal Medical when he switched jobs.

Plaintiffs contend that Section 7.3 of the Terms and Conditions show that the contract was still valid. (Resp., Dkt. 24, at 7). That section states that Laerdal Pty "may from time to time nominate any other corporation with which we are associated for whom you are to work or carry out duties. If that work or those duties are within the scope of your ordinary duties, you must do that work or perform those duties for that corporation." (2013 Agreement, Dkt. 23-2, at 4). Laerdal contends that the 2013 Agreement continued under this reading because Laerdal Pty had instructed or allowed Tomczak to work at Laerdal Medical. (Resp., Dkt. 24, at 7). However, Tomczak's employment for Laerdal Medical exceeds the kind of employment envisioned in Section 7.3. By moving from Australia to Texas, Tomczak was not nominated for temporary work at an associated

---

[4] Laerdal understands "company" to have a dynamic meaning, referring to whichever Laerdal subsidiary is employing Tomczak at a given time. (Resp., Dkt. 24, at 7). But "company" must have a fixed meaning at the time of the contract. In other words, "company" must refer to the company employing Tomczak at the time the contract was signed. The party to the contract opposite Tomczak cannot prospectively vary nor change when he accepts a new position with a different subsidiary.

6

Laerdal corporation. Rather, Tomczak began an entirely new position, accepting a full-time job offer from Laerdal Medical. That Tomczak took on a permanent new role, with new responsibilities and compensation, shows that it was not a "time to time nominat[ion]" to work for another Laerdal entity. (2013 Agreement, Dkt. 23-2, at 4). Moreover, Section 7.3 *required* Tomczak to transfer positions for temporary reassignment. In their 2018 offer, Laerdal Medical gives Tomczak the *option* to transfer, implying that it was not a requirement to transfer under Section 7.3.

Section 8 of the Terms and Conditions further bolsters Tomczak's interpretation over Plaintiffs'. There, the Terms and Conditions specify that Tomczak may only be required to work "(a) anywhere in Australia, temporary or permanently, or (b) anywhere outside Australia, *temporarily*." (2013 Agreement, Dkt. 23-2, at 4) (emphasis added). Tomczak's employment with Laerdal Medical in the United States was not temporary, but for an indefinite, "at-will" basis. (2018 Agreement, Dkt. 23-3). Under the 2013 Terms and Conditions, Laerdal could not have forced Tomczak to continue permanently working for a subsidiary outside Australia. Again, Tomczak's move cannot be read as a temporary relocation, but a new job position altogether.

Finally, other miscellaneous parts of the 2013 Agreement show that it was no longer operative once Tomczak began work in the United States. For example, Section 2.2 states that Tomczak's salary will be paid to a "bank account or building society account in Australia[.]" (2013 Agreement, Dkt. 23-2, at 2). The leave period corresponds to Australian—not American—law. (*Id.* at 2–3). The Agreement references Australian "Moral Rights" related to development of intellectual property at the job. (*Id.* at 5–6). The noncompete provision entails specification that Tomczak cannot work "elsewhere in Australia[.]" (*Id.* at 6). The contract frequently references other Laerdal subsidiaries as "associates," which does not make sense if Tomczak's contract already covers employment with any Laerdal subsidiary. (*Id.* at 1–6). Put simply, the 2013 Agreement that governs

7

his employment with the Australian company in Australia under Australian law did not survive his transition to a different American company under a new agreement.

### B. Tomczak is Not Estopped

Plaintiffs next contend that Tomczak is quasi-estopped from arguing that the 2013 Agreement does not govern because he has already reaped the benefits of the 2013 Agreement. (Resp., Dkt. 24, at 3). Namely, Plaintiffs argue that Tomczak insisted on receiving extra vacation, bonus pay, and other benefits that were unavailable under the 2018 Agreement but were required by the 2013 Agreement. (*Id.* at 4). Plaintiffs' contentions are outside the pleading. *See Dorsey,* 540 F.3d at 338. Nowhere in their complaint do Plaintiffs allege that Tomczak deliberately availed himself of benefits under the 2013 Agreement such that the Court could find it plausible that he should be estopped from arguing the 2013 Agreement is void. The Court cannot rule on estoppel based on material that is outside the pleading. *Id.*

As an additional problem, quasi-estoppel applies only to "obligations in the same transaction between the same parties[.]" *Nolasco v. CitiMortgage, Inc.*, No. CIV.A. H-12-1875, 2012 WL 3648414, at *5 (S.D. Tex. Aug. 23, 2012); *see also Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008) ("Estoppel . . . generally prevents one party from misleading another to the other's detriment or to the misleading party's own benefit."). Laerdal Medical is not a party to the 2013 Terms and Conditions, so it cannot raise an estoppel argument. *See Nolasco*, 2012 WL 3648414, at *5 ("Nolasco cannot assert rights under CMI's agreement with Freddie Mac."). Laerdal Pty could raise an estoppel defense, but it does not appear to have suffered a detriment from Tomczak receiving extra time off from Laerdal Medical. Accordingly, the Court finds that Tomczak is not estopped from asserting that the 2013 Terms and Conditions are no longer binding.

**C. The 2013 Terms are Not Incorporated**

Because the 2013 Terms and Conditions no longer applied after Tomczak left Laerdal Pty, they may only bind Tomczak if they were incorporated into his 2018 Agreement by reference. "[A] contract will incorporate terms from another document . . . when (1) a particular document is described in such terms that its identity may be ascertained beyond doubt, (2) the parties had reasonable notice of the terms, and (3) the parties manifested assent to the terms." *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 449 (N.D. Tex. 2019) (quotation marks omitted). The 2018 Agreement does not expressly incorporate the 2013 Terms and Conditions, nor does it give Tomczak notice that he is bound by those terms. Accordingly, the 2013 Terms and Conditions are not incorporated into the 2018 Agreement.

Instead, Plaintiffs argue that the 2013 Terms and Conditions remain valid because the 2018 Agreement did not explicitly "supersede" the 2013 contract. (Resp., Dkt. 24, at 6–8; Reply, Dkt. 26, at 6–7). The superseding question arises when the same parties who are already bound by a contract enter into a new agreement. *See, e.g.*, *Balboa Ins. Co. v. K & D & Assoc.*, 589 S.W.2d 752, 758 (Tex. App.—Dallas 1979, writ ref'd n.r.e.) ("*If the parties to one contract execute another* whose terms are so inconsistent with the first that they both cannot stand, the first agreement is conclusively presumed to have been superseded by the second.") (emphasis added); *Fish v. Tandy Corp.*, 948 S.W.2d 886, 898 (Tex. App.—Fort Worth 1997, writ denied) ("[B]efore one contract is merged into another, the last contract must be between the *same* parties as the first . . . .") (emphasis in original).

This is not a case where the same parties executed different contracts. Instead, the 2013 Terms and Conditions were between Laerdal Pty and Tomczak, while the 2018 Agreement was between Laerdal Medical and Tomczak. Plaintiffs admit that the signatories between the two parties are different. (Resp., Dkt. 24, at 9 ("Indeed, the signatory entities are not even the same in both contracts[.]")). The terms and conditions expired, so the question of whether they were superseded

9

is moot. Because Laerdal Medical was a new signatory, it must have explicitly incorporated the 2013 Terms and Conditions into its new contract for them to remain binding.

Finally, Plaintiffs argue that it would be "absurd" to hold that the 2013 Terms and Conditions terminated when Tomczak left to the United States. (Resp., Dkt. 24, at 8–9). Plaintiffs suggest that Tomczak's employment cannot have terminated with Laerdal Pty in 2018 because his noncompete would end in 2020, while he was still employed with Laerdal Medical, and that this result would be odd. (*Id.*). That result, however, is solely the result of Plaintiffs' own decision not to have Tomczak sign a new noncompete. It may be odd that a noncompete would expire when Tomczak was still working for a Laerdal subsidiary, but the mere fact that both corporations share the same parent company cannot resuscitate an expired noncompete.

Because the 2013 Terms and Conditions expired in 2020 at the latest, they can no longer bind Tomczak. Accordingly, the Court will grant the partial motion to dismiss without reaching the question of whether the 2013 Terms and Conditions are overbroad.

### D. Motion for Leave to File Sur-Reply

Plaintiffs filed a motion for leave to file a sur-reply in opposition to Defendants' motion to dismiss. (Dkt. 27). The Court finds that a sur-reply is unnecessary. Sur-replies are "heavily disfavored," and the decision to allow a sur-reply lies within the district court's discretion. *Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, No. 23-20424, 2024 WL 1787927, at *2 (5th Cir. Apr. 25, 2024) (citing *Butler v. S. Porter*, 999 F.3d 287, 297 (5th Cir. 2021)). "But when a party raises new arguments or evidence for the first time in a reply, the district court must either give the other party an opportunity to respond or decline to rely on the new arguments and evidence." *Id.* (citing *Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 296 (5th Cir. 2022)).

Plaintiffs seek to file a sur-reply to address Defendants' arguments on estoppel. (Mot. Leave, Dkt. 27). Defendants did not raise a new argument for the first time on estoppel—rather, they were

responding to Plaintiffs' new argument on estoppel that Plaintiffs raised in their response. (*See* Resp., Dkt. 24; Reply, Dkt. 26). The matter has been adequately briefed. Moreover, Plaintiffs' arguments on estoppel rest on an alleged patten of conduct that is entirely absent from their complaint. *See infra*, Section III.B. Their proposed sur-reply cannot rectify this pleading deficiency.

## IV. CONCLUSION

For these reasons, the Court **IT IS ORDERED** that Defendants' Motion to Dismiss, (Dkt. 23), is **GRANTED**. Plaintiffs' claims for breach of contract are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave, (Dkt. 27), is **DENIED**.

**SIGNED** on May 13, 2024.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE